UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BETH ANN OSTROWSKI,

|  |  |  |
|---|---|---|
| | Plaintiff, | Civil Action No. 16-13988 |
| | | Honorable John Corbett O'Meara |
| | | Magistrate Judge David R. Grand |
| v. | | |

SOCIAL SECURITY
COMMISSIONER,

Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 15]

Plaintiff Beth Ann Ostrowski ("Ostrowski") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") that she was no longer disabled as of January 30, 2015, and was therefore no longer entitled to receive Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act") as of that date. Both parties have filed summary judgment motions [11, 15], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## I.      RECOMMENDATION

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Ostrowski has not been disabled under the Act since January 30, 2015. Accordingly, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Ostrowski's Motion for Summary Judgment [11] be DENIED, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

## A.     Procedural History

On October 23, 2013, Ostrowski filed an application for DIB, alleging a disability onset date of August 3, 2012.  (Tr. 80, 139).  This application was denied at the initial level.  (Tr. 80).  Ostrowski filed a timely request for an administrative hearing, which was held on June 9, 2015, before ALJ Anthony R. Smereka.  (Tr. 37-67).  Ostrowski, who was not represented by an attorney, testified at the hearing, as did vocational expert ("VE") Larissa Boase.  (*Id.*).  On November 16, 2015, the ALJ issued a written decision finding that Ostrowski was disabled under the Act from August 3, 2012 through January 29, 2015, but that on continuing disability review, she is not disabled under the Act from January 30, 2015 onwards.  (Tr. 20-32).  On September 8, 2016, the Appeals Council denied review.  (Tr. 1-5).  Ostrowski timely filed for judicial review of the final decision on November 10, 2016.  (Doc. #1).  On March 31, 2017, Ostrowski filed a Motion for Summary Judgment.  (Doc. #11).  The Commissioner filed a Motion for Summary Judgment on June 22, 2017.  (Doc. #15).

## B.     Framework for Disability Determinations

Under the Act, DIB are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Under the eight-step continuing disability review process for DIB recipients, the ALJ must determine at Step One whether the beneficiary engaged in substantial gainful activity at any time after the onset date; at Step Two, whether the beneficiary has an impairment or combination of impairments that meet or medically equal a listed impairment; at Step Three, whether the beneficiary experienced medical improvement; at

Step Four, whether the medical improvement was related to the beneficiary's ability to do work; at Step Five, whether an exception to medical improvement applies; at Step Six, whether the beneficiary's current impairments in combination are severe; at Step Seven, whether the beneficiary can perform her past relevant work in light of her residual functional capacity ("RFC"); and at Step Eight, whether the beneficiary's RFC allows her to perform other work existing in significant numbers in the national economy.  *See* 20 C.F.R. § 404.1594(f).  "[T]he Commissioner bears the burden of proof at each of these steps."  *Delacotera v. Berryhill*, No. 3:16-CV-01464, 2017 WL 971935, at *3 (M.D. Tenn. Mar. 14, 2017).  "There is no presumption of continuing disability," and "[i]nstead, the Commissioner applies the above procedures to determine whether the claimant's disability has ended and if she is now able to work."  *Reeves v. Comm'r of Soc. Sec.*, No. 1:13-CV-325, 2014 WL 2434112, at *3 (S.D. Ohio May 29, 2014), *report and recommendation adopted*, No. 1:13-CV-00325, 2014 WL 2773258 (S.D. Ohio June 19, 2014) (citing *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007)).

### C.    Background

#### 1.    The Record

Ostrowski alleges disability as a result of bleeding of the brain, memory loss, dislocated jaw, neck and back injuries, severe headaches, post-traumatic stress disorder, and hearing loss. (Tr. 162).  She stopped working on August 3, 2012, which is her alleged onset date and also the date in which she was in a motor vehicle accident.  (Tr. 44, 162).  Prior to August 3, 2012, she was a department manager at Walmart, where she had worked for over ten years.  (Tr. 44-48).

The Court has thoroughly reviewed the record in this matter, including Ostrowski's medical record, Function Report, Disability Reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make

references and provide citations to the record as necessary in its discussion of the parties' arguments.

    2.    *Vocational Expert's Testimony*

Larissa Boase testified as an independent VE at the administrative hearing.  (Tr. 57-62). At the beginning of the hearing, the VE assented to the ALJ's instructions that if she gives an opinion that conflicts with the information in the Dictionary of Occupational Titles ("DOT"), she should point out the conflict and provide the basis for her opinion.  (Tr. 58-59).  The VE characterized Ostrowski's past relevant work at Walmart as a retail department manager (DOT code 185.167-046) as unskilled in nature, Specific Vocational Preparation ("SVP") of 7, and medium according to the DOT but heavy as performed.  (Tr. 59-60, 205).

The ALJ asked the VE to imagine a hypothetical individual of Ostrowski's age, education, and work experience that could perform light work – lifting no more than twenty pounds and lifting up to ten pounds frequently – with the following limitations:  standing and walking at least six hours in an eight-hour workday; sitting at least six hours in an eight-hour workday; requiring a sit/stand option that would allow the individual to perform the work either in a sitting or standing position; no exposure to hazards, which includes work at unprotected heights and work around dangerous, moving machinery; no climbing ladders, ropes, or scaffolds; occasionally climbing ramps or stairs; occasionally stooping, kneeling, crouching, or crawling; frequently balancing; no driving in the course of employment; no reaching above shoulder level with the right, dominant upper extremity; no concentrated exposure to vibration; no constant handling or fingering; and no use of foot controls.  (Tr. 60-61).  In addition, the individual should be restricted to unskilled work, meaning simple, repetitive tasks; no fast production pace work where the pace is set by others; and no conveyor belt or assembly line work.  (Tr. 61).  The

VE testified that the hypothetical individual would be capable of performing the following jobs in the national economy:  ticket seller (100,000 jobs) and clerical checker (50,000 jobs).  (*Id.*).

The ALJ then asked the VE to imagine a hypothetical individual with the same limitations as in the previous example, but who was restricted to sedentary work.  (Tr. 62).  The VE testified that there were still jobs in the national economy that this individual could perform:  order clerk (100,000 jobs) and surveillance system monitor (50,000 jobs).  (*Id.*).  The VE also testified that the individual could have no more than two unexcused absences in a thirty-day period, or no more than five unexcused absences in a year.  (*Id.*).

### D.    The ALJ's Findings

The ALJ found that between August 3, 2012 and January 29, 2015, Ostrowski suffered from several severe impairments – motor vehicle residuals, status post cervical discectomy with fusion, labral reattachment of the right shoulder, and adjustment disorder with anxiety – and was under a disability under the Act.  (Tr. 23-29).  But the ALJ determined that as of January 30, 2015, Ostrowski's disability ended, and she had not engaged in substantial gainful activity since that date.  (Tr. 23, 29).  The ALJ then found that Ostrowski had not developed any new impairments since January 30, 2015, and her current impairments were the same as those that were present from August 3, 2012 to January 29, 2015.  (Tr. 29).

The ALJ concluded that medical improvement occurred as of January 30, 2015, and, since that time, there has been an increase in her RFC, meaning that she has been capable of performing light work, with the following additional limitations:  she cannot lift more than ten pounds with her right upper extremity; she can only occasionally climb ramps and stairs; she cannot climb ladders, ropes, or scaffolds; she cannot drive in the course of employment or use any foot controls; she cannot perform constant handling or fingering with either hand or reach

5

above shoulder level with her right upper extremity; she must avoid concentrated exposure to vibrations; she cannot be exposed to hazards, including work at unprotected heights or around dangerous moving machinery; and she is limited to unskilled work, meaning simple and repetitive tasks, and no fast-paced production work where the pace is set by others.  (Tr. 29-30). Citing the VE's testimony, the ALJ next found that Ostrowski is capable of performing a significant number of jobs that exist in the national economy:  ticket seller and checker.  (Tr. 31-32).  As a result, the ALJ determined that Ostrowski's disability ended on January 30, 2015, and since then, she has not again become disabled under the Act.  (Tr. 32).

### E.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide

6

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole.  *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ.  *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).  There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

F.    **Analysis**

In her motion for summary judgment, Ostrowski argues that:  (1) the RFC is not supported by substantial evidence because the ALJ "misstated critical evidence"; (2) the ALJ should have limited her to sedentary work instead of light work in the RFC; (3) the ALJ did not

properly convey Ostrowski's limitations to the VE; and (4) the ALJ erred in failing to develop the record where there were no medical opinions on Ostrowski's condition after her date of medical improvement.[1]  These arguments are addressed below.

### 1. The RFC is Supported by Substantial Evidence

Ostrowski argues that the ALJ provided an inaccurate recitation of the evidence and that the ALJ's finding that her "hand and arm numbness [had] 'resolved'" was inaccurate.  (Doc. #11 at 16, 18).  Ostrowski points out that the numbness in her hand and arm continued after January 30, 2015.  (*Id.* at 17-18).  She argues that the numbness causes limitations in using her hands that would significantly limit her ability to perform the jobs the ALJ found her capable of doing.  (*Id.* at 18).  Thus, in her view, the case should be remanded "for further consideration of [her] limitations in light of ongoing arm and/or hand numbness."  (*Id.*).  A review of the record, however, shows that the ALJ's findings with respect to this issue are supported by substantial evidence.

Ostrowski bases her argument on the following text from the ALJ's decision:

> By most indications, the claimant's cervical spine surgery appears to have been a success, and she stated that she has been "doing well" since the surgery and that her range of motion has improved. . . . Additionally, she continued to have good extremity strength to accompany her improved functionality, and nerve issues such as her arm numbness apparently resolved following her surgery.

(Doc. #11 at 16) (citing Tr. 31).  The ALJ concludes this paragraph by stating:  "Accordingly, I find that [Ostrowski's] statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible."  (Tr. 31).  Thus, the purpose of this paragraph was not to evaluate Ostrowski's ability to perform substantial gainful activity; rather, the purpose was to

---

[1] Ostrowski is "only challenging the ALJ's finding that she was no longer disabled as of January 30, 2015."  (Doc. #11 at 7).

evaluate her credibility – in other words, the consistency of her activities with her professed limitations.  The Court also notes that the ALJ only said that Ostrowski's arm numbness was "apparently resolved" and did not say that her hand numbness was resolved as well.  And, the ALJ went on to evenly evaluate the medical evidence regarding these impairments in formulating the RFC.

For example, he noted that on January 29, 2015, "despite some left hand numbness, [her] left arm pain had resolved, [and] her upper extremity strength was intact."  (Tr. 30).  He also pointed out that in February 2015, Ostrowski still reported some left hand numbness, but she had good range of motion in her upper extremities, along with full strength, except in her right shoulder.[2]  (*Id.*).  In addition, he considered that in April 2015, Ostrowski had ongoing hand numbness, however, "her arm numbness had resolved, and she continued to exhibit good range of motion and full strength."  (*Id.*).

Indeed, on January 29, 2015, Martin B. Kornblum, M.D., recorded that Ostrowski experiences numbness in her left hand but her upper extremity strength "remains intact."  (Tr. 397).  On February 5, 2015, Sophia Grias, M.D., wrote:  "She still has the numbness in the right arm.  On the left side she just has the numbness in her left hand."  (Tr. 545).  Dr. Grias recorded some of Ostrowski's alleged functional limitations, including pain while brushing her teeth, difficulty eating hard food because of her jaw, and dizziness if she is in the car for too long.  (Tr. 546).  But none of these limitations are tied to the numbness in her hands and arms.  Instead, Dr. Grias found that Ostrowski was in no acute distress and that her upper extremities had good range of motion, 5/5 strength (except for in her right shoulder), and reflexes that were 2+

---

[2] As to Ostrowski's right shoulder, earlier in the decision, the ALJ noted:  "March 2014 imaging showed right shoulder impingement with a tear . . . . The claimant underwent right shoulder surgery for labral detachment in April 2014, following which she reported doing 'very well.' . . . She made significant strides by July 2014 performing range of motion exercises."  (Tr. 26).

bilaterally and symmetric. (*Id.*). On April 15, 2015, Ostrowski was hospitalized for a swollen eye, but she denied any extremity swelling, localized weakness, or numbness. (Tr. 431). She was discharged the next day in stable condition, and Toms P. Matthew, M.D., recorded no complaints of numbness in her hands and arms. (Tr. 432-33, 438). A musculoskeletal exam revealed normal range of motion. (Tr. 439).

On April 30, 2015, Dr. Grias wrote that "[t]he numbness in [Ostrowski's] arms has resolved, but her hands continue." (Tr. 542). Dr. Grias noted similar functional limitations as before, as well as that Ostrowski can't drive because of numbness in her foot and legs – not because of numbness in her hands and arms. (Tr. 543). Dr. Grias again concluded that Ostrowski was in no acute distress and had good range of motion in her upper extremities, 5/5 strength (except for in her right shoulder), and reflexes that were 2+ bilaterally and symmetric. (*Id.*). Her "Assessment/Plan" addressed neck pain, low back pain, and "TBI" (presumably traumatic brain injury), but not hand numbness. (Tr. 543-44). On January 7, 2016, Ostrowski saw Dr. Grias with principal complaints of "[n]eck, back, knee, and jaw pain." (Tr. 697). While Ostrowski reported numbness in her hands, Dr. Grias made the same findings as before with respect to Ostrowski's bilateral upper extremity range of motion, strength, and reflexes. (Tr. 697). And, Dr. Grias' "Assessment/Plan" again failed to include any restrictions or recommendations related to her hand numbness. (Tr. 697-98).

The foregoing constitutes substantial evidence in support of the portion of the RFC limiting Ostrowski to no constant handling or fingering with either hand, lifting no more than ten pounds with the right upper extremity, no reaching above shoulder level with the right upper extremity, no concentrated exposure to vibrations, no exposure to hazards, and no fast-paced production work where the pace is set by others. (Tr. 30).

2.     *The ALJ did not Err in Limiting Ostrowski to Light Work*

Ostrowski argues that because the ALJ's RFC limited her to lifting no more than ten pounds with her right upper extremity, "the ALJ was effectively finding that she could only lift 10 pounds," which "more properly equates with *sedentary* work."  (Doc. #11 at 19) (emphasis in original).   She therefore believes that she should have been limited to sedentary work, as opposed to light work.  (*Id.* at 19-20).  This argument lacks merit.

The regulations define sedentary and light work as follows:

> (a) Sedentary work.  Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

> (b) Light work.  Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(a), (b).

As can be seen by these definitions, the physical exertion requirements for sedentary and light work involve more than just the ability to lift a certain amount of weight; they also involve the ability to walk, stand, and sit.  Ostrowski has not shown how her ability to lift on the left and to walk, stand, and sit are better suited for sedentary – and not light – work.  She cites to no legal authority that supports her argument that the ALJ could not adopt an RFC for light work with certain additional restrictions, including with respect to lifting.

Meanwhile, the ALJ supported the RFC with citations to the evidence.  He noted that on January 29, 2015, three months after Ostrowski had cervical spine surgery, she reported that she was "overall, doing well" despite some "ongoing discomfort and intermittent pain into her right arm."  (Tr. 30).  He considered that in February 2015, she reported some dizziness, left hand numbness, and numbness in her trunk and legs that tingled.  (*Id.*).  She also reported back pain radiating to her legs.  (*Id.*).  She had limited range of motion in her neck and lumbar tenderness, but good range of motion in her upper and lower extremities and full strength except in her right shoulder.  (*Id.*).  The ALJ reviewed an MRI from April 2015 that showed slight retrolisthesis, facet hypertrophy, foraminal stenosis, and a disc herniation.  (*Id.*).  Ostrowski complained of neck and back pain, ongoing hand and leg numbness and dizziness, and exhibited tenderness and limited lumbar range of motion.  (*Id.*).  Yet "her arm numbness had resolved, and she continued to exhibit good range of motion and full strength."  (*Id.*).

These findings are supported by substantial evidence.  As noted above, despite having numbness and tingling in her trunk and extremities, on three separate occasions – February 5, 2015, April 30, 2015, and January 7, 2016 – Dr. Grias found that Ostrowski's bilateral upper and lower extremities had good range of motion, 5/5 strength (except in her right shoulder), and reflexes that were 2+ bilaterally and symmetric.  (Tr. 543, 546, 697).  On these dates, Dr. Grias also noted that Ostrowski was in no acute distress.  (*Id.*).  Ostrowski complained of neck pain.  (Tr. 545, 696).  Dr. Grias, however, found that on February 5, 2015, her neck was "moving better"; on April 30, 2015, the range of motion in Ostrowski's neck had improved; and on January 7, 2016, that her neck had functional range of motion.  (Tr. 543, 545, 697).  On April 15, 2015, when Ostrowski was being treated for a swollen eye, Dr. Matthew recorded that she reported no back pain and joint pain; no leg swelling; and no dizziness, weakness,

lightheadedness, and numbness.   (Tr. 438).   Upon physical examination, he found that her musculoskeletal system had normal range of motion.   (Tr. 439).   He imposed no restrictions on her movement and she was to perform activity as tolerated.   (Tr. 435).   In addition, Ostrowski testified during the hearing that she can walk around the block, stand for forty-five minutes, and sit for an unlimited amount of time.   (Tr. 51, 54).   She testified that after having surgery on her right shoulder, she can only lift and carry a gallon of milk with her right arm.   (Tr. 53).   But she said that she has no limitations with lifting and carrying on the left.   (Tr. 54).

Because the ALJ's RFC is supported by substantial evidence remand is not warranted.

### 3.   *The ALJ Committed Harmless Error in his Questioning of the VE*

At Step Eight of his analysis, the ALJ concluded – based on the VE's testimony – that Ostrowski could perform the following unskilled light[3] jobs that exist in significant numbers in the national economy:   ticket seller (100,000 jobs) and checker (50,000 jobs).   (Tr. 32). Ostrowski argues that the ALJ erred by giving the VE an RFC that was flawed because it did not include a limitation that the individual could not lift more than ten pounds with her right upper extremity.   (Doc. #11 at 20).   Ostrowski argues that, as a result, "the ALJ's finding that [she] could perform such light jobs as ticket taker and checker is not supported by substantial evidence."   (*Id.*).   While the ALJ did err in this regard, the error was harmless.

In the context of continuing disability review,

> unlike in initial disability determinations, "the ultimate burden of proof lies with the Commissioner in termination proceedings."   *Kennedy v. Astrue*, 247 Fed.[]Appx. 761, 765, 768 (6th Cir. 2007) (citations omitted). To meet that burden, the Commissioner must establish that the "physical or mental impairment on the basis of which [DIB was awarded] has ceased, does not exist or is not disabling," 42 U.S.C. § 423(f), by presenting "substantial evidence" that demonstrates that

---

[3] The ALJ initially characterized these jobs as sedentary, but in the next two lines, he indicated that they are both light work.   (Tr. 32).

> (A)  there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
>
> (B)  the individual is now able to engage in substantial gainful activity . . .
>
> 42 U.S.C. § 423(f)(1).  That is, the Commissioner must establish that medical improvement has occurred and that such improvement is related to the claimant's ability to work.  20 C.F.R. § 404.1594(a).

*Delacotera*, 2017 WL 971935, at *3.

The regulations for the second part of the cessation analysis, which focuses on whether the individual has the ability to engage in substantial gainful activity, "incorporate many of the standards set forth in the regulations that govern initial disability determinations."  *Reeves*, 2014 WL 2434112, at *2 (citing *Kennedy*, 247 F. App'x at 765).  "An increase in the claimant's functional capacity will lead to a cessation of benefits only if, as a result, the claimant can perform her past work or other work that exists in significant numbers in the national economy."  *Id.* (citing 20 C.F.R. §§ 404.1594(f)(7), (8), 416.994(f)(7), (8)).

The Commissioner's finding that a claimant can perform past work or other work that exists in significant numbers in the national economy must be supported by substantial evidence.  "This 'substantial evidence' may be in the form of [VE] testimony in response to a hypothetical question, 'but only 'if the question accurately portrays [the claimant's] individual . . . impairments.''"  *Vandenboss v. Comm'r of Soc. Sec.*, No. 14-12283-DT, 2015 WL 3823558, at *3 (E.D. Mich. June 18, 2015) (internal citations omitted); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (establishing that where the ALJ's questioning is accurate, a VE's "testimony concerning the availability of suitable work may constitute substantial evidence").  In other words, "[t]he ALJ is

not required to question a [VE] on this issue," but "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs" is needed for the Commissioner to meet this burden. *Johnson v. Comm'r of Soc. Sec.*, No. 1:15-cv-449, 2016 WL 2342892, at *3 (W.D. Mich. Apr. 15, 2016) (quoting *O'Banner v. Sec'y of Health & Human Servs.*, 587 F.2d 321, 323 (6th Cir. 1978)). Because this standard "requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy[,] . . . ALJs routinely question [VEs] in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding." *Id.* (citation omitted).

An ALJ is not required to list a claimant's medical conditions in his questioning; instead, he must present an assessment of what the claimant "can and cannot do." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). And "the ALJ is required to incorporate only those limitations that he accepts as credible." *Phillips v. Comm'r of Soc. Sec.*, No. 1:13-CV-02590, 2014 WL 4302503, at *21 (N.D. Ohio Aug. 28, 2014) (citing *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007)). "However, where the ALJ relies upon a hypothetical question that fails to adequately account for all of the claimant's limitations, it follows that a finding of disability is not based on substantial evidence." *Id.* (internal citations omitted).

In this case, the Commissioner concedes that the ALJ erred by not including a limitation for lifting no more than ten pounds with the right upper extremity in his hypothetical question to the VE. (Doc. #15 at 16). But the Commissioner argues that this error was harmless and that Ostrowski has not shown otherwise. (*Id.* at 16-17). Ostrowski did not file a reply contesting this point, and the Court agrees that the ALJ committed harmless error in his questioning of the VE.

"[A]n error is harmless only if remanding the matter to the agency 'would be an idle and

15

useless formality' because 'there is [no] reason to believe that [it] might lead to a different result.'" *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 520 (6th Cir. 2011) (quoting *Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004)).  Here, even if the ALJ had included the limitation in question in the hypothetical to the VE, the ALJ clearly still would have found, based on the VE's testimony, that Ostrowski could perform a significant number of jobs in the national economy and is therefore not disabled.  As summarized above, the ALJ first asked the VE about a hypothetical individual who could perform light work – which, the ALJ explained, "involves lifting no more than 20 pounds maximum and less weights, more frequently, of 10 pounds" – with some additional limitations.  (Tr. 60).  The VE testified that this individual could perform the jobs of ticket seller (100,000 jobs) and checker (50,000 jobs).  (Tr. 61).  The ALJ next asked the VE about a hypothetical individual who was limited to sedentary work – which, according to the regulations, "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools" – and "keeping all other restrictions the same."  20 C.F.R. § 404.1567(a); (Tr. 61-62).  The VE then testified that the individual could perform the jobs of order clerk (100,000 jobs) and surveillance system monitor (50,000 jobs).  (Tr. 62).

Although the ALJ relied on the VE's testimony regarding light work, the VE's testimony regarding jobs at the sedentary level shows that the ALJ's error was harmless.  Sedentary work limits both upper extremities to lifting no more than ten pounds at a time.  It therefore (1) encompasses the limitation that was omitted by the ALJ of no lifting more than ten pounds with the right upper extremity and (2) imposes a greater restriction than the RFC for light work with no lifting more than ten pounds with the right upper extremity.  Because the VE opined that an individual limited to sedentary work could perform the jobs of order clerk and surveillance

system monitor, had the ALJ included a limitation of no lifting more than ten pounds with the right upper extremity in his hypothetical for light work, a finding of not disabled necessarily would have followed.  Thus, remand is not in order because it would be an "idle and useless formality."

In her motion, Ostrowski argues that remand is nevertheless appropriate because "the ALJ did not find that plaintiff could perform these [sedentary] jobs, nor did he indicate that such jobs existed in significant numbers in the national economy."  (Doc. #11 at 21).  But this argument misses the mark because, as shown above, the ALJ did not need to find that Ostrowski could perform these sedentary jobs.  As the Commissioner persuasively argues, "the [VE] listed a significant number of jobs someone could do who was restricted to *sedentary* work, which was *more restrictive* than the limited range of light work in the assessed RFC [].  Thus, it is plain someone with the assessed RFC could do a significant number of jobs."  (Doc. #15 at 16-17) (emphasis in original).  Accordingly, Ostrowski's argument lacks merit, and the ALJ's error was harmless.

### 1.     The ALJ did not Err in Failing to Develop the Record

Ostrowski, who is now represented by counsel, takes issue with the ALJ allegedly not fulfilling his duty to develop the record when she had been representing herself.  (Doc. #11 at 22).  She argues that the ALJ could have fulfilled this duty by requesting an update from her treating sources or "where the record is insufficient to make a determination, [the ALJ] could have requested an updated consultative examination."  (*Id.* at 23).  In Ostrowski's view, the ALJ's failure to do either one of these things means his decision is not based on the medical evidence and therefore provides grounds for remand.  (*Id.* at 22-23).  The Court disagrees.

The ALJ concluded that the RFC was supported by the objective medical evidence, which is referenced above, but recognized that "[a]s for the opinion evidence, there were no

medical opinions or other opinions subsequent to the claimant's documented medical improvement." (Tr. 31). Ostrowski cites to *Lashley v. Sec'y of HHS*, 708 F.2d 1048 (6th Cir. 1983) in support of her argument that, because of the lack of opinion evidence, the ALJ had a duty to develop the record. The Sixth Circuit summarizes its finding in *Lashley* as follows:

> In [*Lashley*], this court reversed a denial of disability benefits partly because the ALJ failed to develop "a full and fair record." *Id.* at 1051. In that case, however, the claimant was a 79 year-old with a fifth grade education, who after suffering two strokes had trouble reading, writing, and reasoning. *Id.* at 1049. At Lashley's hearing, the ALJ conducted a superficial examination that failed to heed the claimant's obvious confusion and inability to effectively present his case. *Id.* at 1052. Finding this process insufficient, the panel held that under special circumstances – when a claimant is (1) without counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with hearing procedures – an ALJ has a special, heightened duty to develop the record. *Id.* at 1051-52.

*Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008).

Whether an ALJ has satisfied his "special, heightened duty" to develop the record is determined on a case-by-case basis. *See Osburn v. Apfel*, No. 98-1784, 1999 WL 503528, at *7 (6th Cir. July 9, 1999) (internal citation omitted). Although there is no bright line test to be applied, courts have recognized that "[f]ailure by an ALJ to fully develop the factual record in a particular matter is often evidenced by superficial or perfunctory questioning, as well as a failure to obtain all available medical records and documentation." *Vaca v. Comm'r of Soc. Sec.*, No. 1:08-cv-653, 2010 WL 821656, at *6 (W.D. Mich. Mar. 4, 2010) (emphasis added) (citing cases). Indeed, courts have explicitly stated: "An ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Figard v. Comm'r of Soc. Sec.*, No. 1:09-cv-425, 2010 WL 3891211, at *7 (W.D. Mich. July 1, 2010) (quoting *Carter v. Chater*, 73 F.3d 1019, 1022 (10th Cir. 1996)).

Here, Ostrowski chose to proceed without counsel (Tr. 43), took "special classes" to graduate from high school, and had below-average results on an intelligence test (Doc. #11 at 22) (citing Tr. 64, 221); however, the hearing transcript indicates that she had no difficulty understanding or answering the ALJ's questions or navigating the hearing procedures. *See Wilson*, 280 F. App'x at 459 (finding no special circumstances imposed a heightened duty on the ALJ to develop the record where "[t]hough Wilson chose to proceed without counsel, the hearing transcript discloses her grasp of the proceedings and the adequacy of her case presentation to the ALJ"); *see also Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275-76 (6th Cir. 2002). Furthermore, Ostrowski does not allege that the ALJ's questioning was superficial or that there were particular pertinent records that were discussed at the hearing that the ALJ should have obtained. Thus, the Court finds Ostrowski's case distinguishable from the facts in *Lashley* and concludes that the ALJ did not have a heightened duty to develop the record.

Moreover, Ostrowski seems to argue that because there was no recent opinion evidence in the record, the ALJ (1) was required to obtain a more recent opinion and (2) improperly based his finding of medical improvement on "no evidence." (Doc. #11 at 22). Neither of these arguments is successful. As explained above, the ALJ based his decision on the medical evidence in the record, and his conclusion is supported by substantial evidence.

As to the argument that the ALJ was required to obtain a more recent opinion, beginning with Ostrowski's contention that the ALJ should have obtained a consultative examination, the applicable regulation provides that an ALJ "*may* purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination or decision on your claim." 20 C.F.R. § 404.1519a(b) (emphasis added); *see also* 20 C.F.R. § 404.1520b(b)(2)(iii) ("We *may* ask you to undergo a consultative

examination at our expense" to resolve an inconsistency or insufficiency in the evidence.) (emphasis added).  Here, there was no inconsistency in the evidence, and the ALJ reasonably found the evidence was sufficient to permit him to make a determination as to Ostrowski's claim.

Finally, as for Ostrowski's argument that the ALJ should have contacted her treating physicians, the regulations provide:

> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after considering the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency.  The action(s) we take will depend on the nature of the inconsistency or insufficiency.  We will try to resolve the inconsistency or insufficiency by taking any one or more of the actions listed in paragraphs (b)(2)(i) through (b)(2)(iv) of this section. We might not take all of the actions listed below.  We will consider any additional evidence we receive together with the evidence we already have.
>
> (i)    We may recontact your medical source.  We may choose not to seek additional evidence or clarification from a medical source if we know from experience that the source either cannot or will not provide the necessary evidence. . . .

20 C.F.R. § 404.1520b(b)(2).  Thus, the applicable regulations did not *require* the ALJ to re-contact her treating physicians; they merely afforded the ALJ this option if he deemed it necessary.

Here, Ostrowski fails to identify what treating physicians should have been re-contacted and what purpose this would have served.  In a footnote, she points out that Dr. Grias "indicated that [Ostrowski] was unab[]le to work after the date upon which the ALJ found she was no longer disabled."  (Doc. #11 at 23 n.2).  But this argument gets her nowhere because "[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician."  *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Harris v. Heckler,* 756 F.2d 431, 435 (6th Cir. 1985)).  Thus, statements by a treating physician that a

claimant is unable to work "are entitled to no deference because the determination of disability is a matter left to the Commissioner." *See Stojic v. Comm'r of Soc. Sec.*, No. 14-1133, 2015 WL 9238986, at *4 (W.D. Mich. Dec. 17, 2015) (citing 20 C.F.R. § 404.1527(d)(1) ("A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled.")); *Bass*, 499 F.3d at 511 (internal citations omitted) ("20 C.F.R. § 404.1527(e)(1) explicitly states that the conclusion of disability is reserved to the [Commissioner]," and "[s]ubsection (e)(3) further elaborates that no 'special significance' will be given to opinions of disability, even if they come from a treating physician."); *see* SSR 96-5p, 1996 WL 374183 (July 2, 1996).

In sum, the ALJ properly considered the evidence that was before him and did not find it necessary to obtain an updated consulting examination and treating source opinion to resolve inconsistencies or insufficiencies in the record.  The decision to not obtain additional opinion evidence was within the ALJ's discretion, and Ostrowski has not shown any abuse of that discretion by the ALJ.  The Court finds no error as to this issue.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.   CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [15] be GRANTED, Ostrowski's Motion for Summary Judgment [11] be DENIED, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

Dated: December 21, 2017      s/David R. Grand      
Ann Arbor, Michigan        DAVID R. GRAND
               United States Magistrate Judge

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 21, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager